UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,  :
                                                      :
     v.                                     :    **MEMORANDUM & ORDER**
                                                      :    17-CR-478 (WFK)
MISHA AZARYEV,  :
                                                       :
                            Defendant.   :
-----------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On February 8, 2018, Misha Azaryev ("Defendant") pled guilty to Count Two of a two-count indictment. Count Two charges Defendant with Hobbs Act Robbery in violation of 18 U.S.C. §§ 1951(a) and (2). In his Plea Agreement, Defendant also stipulated and admitted to his participation in cocaine trafficking and Medicaid fraud and further agreed that at the time of sentencing, this conduct shall be considered by the Court as if he had been convicted of additional counts charging those offenses. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 78 months of incarceration, 3 years of supervised release, a forfeiture money judgment of $32,000.00, and payment of a $100.00 special assessment.

## BACKGROUND

On August 30, 2017, the United States filed an Indictment charging Defendant with one count of Hobbs Act Robbery Conspiracy in violation of 18 U.S.C. § 1951(a) and one count of Hobbs Act Robbery in violation of 18 U.S.C. §§ 1951(a) and (2). Indictment, ECF No. 1. On February 8, 2018, Defendant pled guilty to Count Two of the Indictment, charging a Hobbs Act Robbery, a Class C felony. *See* Plea Agreement ¶ 1, ECF No. 26. In his Plea Agreement, Defendant stipulated and admitted to his participation in cocaine trafficking in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and Medicaid fraud in violation of 18 U.S.C. § 1347. *Id.* ¶ 2. Defendant agreed that at the time of sentencing, this additional conduct shall be considered by the Court and treated as if he had been convicted of additional counts charging

1

these offenses, pursuant to United States Sentencing Guidelines (the "Guidelines" or "USSG") § 1B1.2(c). *Id.*; Def's Sentencing Memo at 1 & n.1, ECF No. 34.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born in Baku, Azerbaijan on July 12, 1988 to the marital union of Sevi Azaryev and Marina Azaryeva (née Ushailova). Presentence Investigation Report ("PSR") ¶ 55, ECF No. 32. Defendant was raised in Baku in a middle-income household. *Id.* ¶ 57. In 1994, Defendant and his family moved to Brooklyn, New York. *Id.* Defendant noted his parents always provided for him and his family did not struggle financially. *Id.* Defendant also noted his parents still help him financially whenever needed. *Id.* ICE records indicate Defendant is a naturalized citizen of this country. *Id.* ¶ 58.

Defendant's parents reside in Brooklyn, New York and are aware of his arrest and remain supportive. *Id.* ¶ 55. Defendant has one sister, age 30, who resides in Staten Island, New York, with whom Defendant maintains a good relationship. *Id.* ¶ 56. She is married with two children. *Id.* Defendant's mother described Defendant as "the best son, husband, father, brother, and best friend," and noted "everybody loves him." *Id.* ¶ 59. Since 2013, Defendant has been in a relationship with Kristina Urman, age 24, who resides at the address of record. *Id.* ¶ 60. Defendant and Ms. Urman are engaged, but have delayed their wedding as they await Defendant's sentencing. *Id.* The relationship has produced one child, age two and a half, who is healthy and resides with Ms. Urman. *Id.* Ms. Urman described Defendant as a "great and amazing man" and noted she and Defendant's family remain supportive and will continue to remain supportive. *Id.* ¶ 61. Prior to his arrest, Defendant resided with Ms. Urman and his daughter in Brooklyn, New York. *Id.* ¶ 62. Defendant described his relationship with Ms. Urman as "great" and noted she has taken care of his business since his arrest. *Id.* ¶ 60.

Defendant did not report any serious medical conditions and does not have a history of mental or emotional problems, which his mother and fiancée corroborated. *Id.* ¶¶ 64-65. According to the PSR, Defendant smoked marijuana from age eighteen to twenty-two, smoking

3

two joints daily. *Id.* ¶ 66. In defense counsel's objections to the PSR, defense counsel states Defendant smoked marijuana from age sixteen to eighteen and twenty-six to twenty-seven. *See* Def.'s PSR Objections at 2, ECF No. 33. Defendant reported consuming vodka occasionally at parties and holidays. PSR ¶ 66. Defendant reported a prior treatment history with Bridge Back to Life in connection with a 2012 DWI arrest. *Id.*

In June 2006, Defendant obtained his high school diploma from Be'er Hagolah in Brooklyn, New York. *Id.* ¶ 67. In 2009, Defendant obtained an associate's degree in applied science in business from Kingsborough Community College in Brooklyn, New York. *Id.* From December 2009 to November 2010, Defendant worked in several financial businesses, including debt consolidation and as a stock broker, earning commission. *Id.* ¶ 73. From November 2010 to October 2011, Defendant worked as a busboy and waiter at El Gaucho restaurant in New York, New York. *Id.* ¶ 72. From October 2011 to February 2015, Defendant worked as a shipping and receiving clerk at COS Phones in Union, New Jersey. *Id.* ¶ 71. The director of operations from COS Phones described Defendant as "a great worker, dependable, and always prompt." *Id.* From February 2015 to October 2016, Defendant was a partial owner of a cell phone repair kiosk in Poughkeepsie, New York. *Id.* ¶ 70.

From November 2016 to September 2017, Defendant owned a cellular repair and sell business in Brooklyn, New York. *Id.* ¶ 69. The business is registered with the New York State Division of Corporations and has three employees. *Id.* Since Defendant's arrest, Defendant's fiancée has taken control of the business. *Id.* Defendant has been in custody since September 5, 2017. *Id.* ¶ 68. According to the PSR, Defendant has a net worth of $84,918.48 and his business has a net worth of $20,511.48, although the PSR indicates the business has a negative monthly cash flow which Defendant and his fiancée make up with their personal savings. *Id.* ¶¶ 75-76.

On April 10, 2014, Defendant was sentenced to one year of conditional discharge, a 90-day suspension of his driver's license, and a $300.00 dollar fine for driving while impaired on December 13, 2012 in Brooklyn, New York. *Id.* ¶ 42. The PSR also references a June 2017 incident during which Defendant allegedly threw a piece of paper in a traffic officer's face and was charged with and convicted of disorderly conduct, although the arrest was originally for attempted assault in the second degree. *Id.* ¶ 43. On October 10, 2017, Defendant paid a fine to resolve the charges. *Id.* Defendant denies throwing paper at a traffic officer. Def.'s PSR Objections at 2. In its sentencing submission, the Government takes issue with Defendant's denial. Gov't Sentencing Memo at 10-11, ECF No. 37. The Government states it contacted the traffic officer involved in the incident after receiving Defendant's objection and the officer stated Defendant verbally berated her, threw the ticket she wrote for him, slapped her in the forehead causing her to fall to the ground, and nearly ran over her with his vehicle. *Id.* at 11.

The PSR lists six prior local arrests dated January 4, 2012, March 29, 2012, March 31, 2012, May 15, 2012, February 21, 2013, and July 1, 2017, all for unknown charges except the July 2017 arrest, which was for disorderly conduct. PSR ¶¶ 48-53. According to the PSR, none of these prior arrests appear on Defendant's National Crime Information Center criminal record report and the NYPD has no record of any of these arrests. *Id.*; Def.'s PSR Objections at 2. For all of these arrests except the January 2012 arrest, a representative from the Kings County Supreme Court indicated the dispositions were sealed. PSR ¶¶ 48-53. Defense counsel objects to these reports being included in the PSR. Def.'s PSR Objections at 2. The Government takes issue with Defendant's objection, explaining that the information in the PSR comes from NYPD police reports indicating the arrests were related to home invasions, drug trafficking, and weapon possession. Gov't Sentencing Memo at 9-10. The Government also notes several of the prior

arrests occurred around the time of the charged robbery. *Id.* at 2-3. The PSR Addendum provides additional information about these prior arrests and associated charges, indicating the arrests were for, *inter alia*, criminal possession of a controlled substance, criminal possession of a weapon, and burglary. PSR Addendum ¶¶ 48-53, ECF No. 40.

With respect to the offense of conviction, in September 2012, Defendant and multiple co-conspirators forcibly entered a Staten Island home where Defendant previously resided. PSR ¶ 7. Defendant was closely acquainted with the primary resident of the home and was aware this individual was involved in cocaine distribution. *Id.* Upon entering the home, Defendant proceeded to the second floor where he knew cocaine proceeds were stored and encountered John Doe #1. *Id.* Defendant took $30,000.00 in cash, among other property. *Id.* During the offense, Defendant allegedly wore a black mask, black gloves, and a bulletproof vest. *Id.* Defense counsel disputes the allegation that Defendant wore a bulletproof vest or body armor during the offense of conviction and argues this allegation should not be considered by the Court. Def.'s PSR Objections at 1-2; Def.'s Supp. PSR Objections at 1-2, ECF No. 35. Defendant also argues only $6,000.00 was taken from the residence, but accepts the $30,000.00 figure. Def.'s PSR Objections at 2. The Government states it does not intend to prove the allegation that Defendant wore body armor in connection with the offense of conviction, but maintains that $30,000.00 was taken as stipulated in the Plea Agreement, contrary to Defendant's objection. Gov't Sentencing Memo at 9, 11.

In addition to the September 2012 robbery in the count of conviction, the PSR describes additional home invasion robberies of narcotics traffickers in February and July 2012 in which Defendant was allegedly involved. PSR ¶ 4. Specifically, the PSR describes a February 2012 robbery in Brooklyn, New York during which Defendant illegally entered the home of a cocaine

6

trafficker for whom Defendant previously worked as a courier, *id.* ¶ 5, and a July 2012 robbery in Sheepshead Bay, New York during which Defendant and co-conspirators allegedly broke into a marijuana stash house and stole marijuana, *id.* ¶ 6. Defendant denies his involvement in these additional robberies and objects to their inclusion in the PSR. Def.'s PSR Objections at 1; Def.'s Supp. PSR Objections at 1. The Government states it does not intend to prove Defendant's involvement in either of these additional robberies and does not object to striking them from the PSR. Gov't Sentencing Memo at 9.

In Defendant's Plea Agreement, Defendant stipulated and admitted to two additional offenses. PSR ¶ 2. Specifically, Defendant admitted to his participation in cocaine trafficking between 2012 and 2017 in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Plea Agreement ¶ 2(a); PSR ¶ 9. Defendant is accountable for at least 3.5 KG but less than 5 KG of cocaine and worked as a courier for a co-conspirator's cocaine delivery service and operated his own cocaine delivery service. Plea Agreement ¶ 3; PSR ¶ 9. Customers called Defendant asking to purchase cocaine and Defendant delivered the cocaine, packaged in small Ziploc bags, in exchange for money. PSR ¶ 9. Defendant also admitted to his participation in Medicaid fraud between 2012 and 2017 in violation of 18 U.S.C. § 1347. Plea Agreement ¶ 2(b); PSR ¶ 10. In connection with this offense, Defendant misrepresented his income and assets to administrative agencies and received government subsidized medical insurance coverage as a result. PSR ¶ 10. Defendant received approximately $32,000.00 in benefits to which he was not entitled. *Id.* Defendant agreed that at sentencing, this additional conduct shall be considered by the Court and treated as if he had been convicted of additional counts charging these offenses pursuant to USSG § 1B1.2(c). Plea Agreement ¶ 2; PSR ¶ 2.

## B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. More generally, the Court's sentence sends a message that a life of crime carries a risk of punishment that outweighs any potential gains.

## C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a), for which he faces a maximum term of imprisonment of twenty years and a minimum term of imprisonment of zero years. 18 U.S.C. § 1951(a). Defendant also faces: not more than three years of supervised release, 18 U.S.C. § 3583(b)(2); not less than one and no more than five years of probation, 18 U.S.C. § 3561(c); a maximum fine in the amount of $250,000.00 or twice the gross gain or loss, 18 U.S.C. §§ 3571(b), (d); and a mandatory special assessment of $100.00, 18 U.S.C. § 3013. Under the Plea Agreement, Defendant faces a forfeiture money judgment of $32,000.00. Plea Agreement ¶¶ 7-14; PSR ¶ 88; Order of Forfeiture, ECF No. 28.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

For Count Two of the Indictment, Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a), the base offense level is 20.[1] USSG § 2B3.1(a). A one level increase is warranted because the loss exceeded $20,000.00.[2] USSG § 2B3.1(b)(7)(B). Probation initially calculated an additional four level increase pursuant to USSG § 3B1.5(2)(B) because Defendant was convicted of a crime of violence and he allegedly used body armor during the commission of the offense, PSR ¶ 18, and calculated an adjusted offense level of 25 for Count Two, PSR ¶ 20. Defense counsel disputes Defendant used any type of body armor during the offense of conviction and argues the four level increase is not warranted, which would result in an adjusted offense level of 21. Def.'s PSR Objections at 1-2; Def.'s Supp. PSR Objections at 1-2. In its sentencing submission, the Government states it does not intend to prove the allegation regarding Defendant's use of body armor in connection with the offense of conviction. Gov't Sentencing Memo at 9. The Plea Agreement does not include the four level increase and calculates an adjusted offense level of 21. Plea Agreement ¶ 3. In the PSR Addendum, in light of the Government's decision not to seek to prove the allegation regarding Defendant's alleged use of

---

[1] Pursuant to USSG § 1B1.11(a), the 2016 version of the Guidelines—which is the Guidelines Manual in effect on the date of Defendant's sentencing—is used here.

[2] As noted, although Defendant disputes that $30,000.00 was taken during the robbery, he does not dispute the one-point adjustment. Def.'s PSR Objections at 2.

9

body armor, Probation eliminates the four level increase from its calculation and arrives at an adjusted offense level of 21. PSR Addendum at 1 & ¶¶ 15-20.

For the stipulated offense of narcotics trafficking in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, the base offense level is 28 because Defendant is accountable for between 3.5 KG and 5 KG of cocaine. Plea Agreement ¶ 3; USSG §§ 2D1.1(a)(5), 2D1.1(c)(6). No adjustments apply, resulting in an adjusted offense level of 28.

For the stipulated offense of Medicaid fraud in violation of 18 U.S.C. § 1347, the base offense level is 6.[3] USSG § 2B1.1(a)(2). Because the loss exceeded $15,000.00, a four level increase applies. *Id.* § 2B1.1(b)(1)(C); Plea Agreement ¶ 3. Accordingly, the adjusted offense level is 10.

Pursuant to the rules in USSG § 3D1.2 for grouping of closely related counts, Count Two and the stipulated offenses of narcotics trafficking and Medicaid fraud cannot be grouped and each counts as a single Group. *See* USSG § 3D1.2 n.7 ("[A] Group may consist of a single count[.]"). The stipulated offense of narcotics trafficking carries the highest adjusted offense level of 28 and counts as one Unit. *Id.* § 3D1.4(a). The stipulated offense of Medicaid fraud, which carries an adjusted offense level of 10, does not result in any increase to the total combined offense level since it is nine or more levels less serious than the offense level applicable to the stipulated offense of narcotics trafficking (which carries the highest offense level). *See* USSG § 3D1.4(c); Plea Agreement ¶ 3. Although the stipulated offense of Medicaid fraud is disregarded in calculating the combined offense level, this "may provide a reason for

---

[3] Although the Plea Agreement calculates a base offense level of 7 for the stipulated offense of Medicaid fraud pursuant to USSG § 2B1.1(a)(1), *see* Plea Agreement ¶ 3, this appears to be an error.

sentencing at the higher end of the sentencing range for the applicable offense level." USSG § 3D1.4(c).

If the adjusted offense level for Count Two is 25 as Probation initially calculated, then the offense level for Count Two is three levels less than 28 (the offense level for the stipulated offense of narcotics trafficking) and counts as one Unit. USSG § 3D1.4(a). If, however, the adjusted offense level for Count Two is 21 as defense counsel and the Government calculate—and as Probation now calculates in the PSR Addendum—then the offense level for Count Two is seven levels less serious than the offense level for the stipulated offense of narcotics trafficking and counts as one-half Unit. *Id.* § 3D1.4(b). Accordingly, the combined offense level is either 29 (for 1.5 Units) or 30 (for 2 Units). *Id.* § 3D1.4.

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. *Id.* § 3E1.1(b). Accordingly, Defendant's total offense level would be 26 if he does not receive a four level increase for allegedly using body armor in connection with the Hobbs Act Robbery charged in Count Two, as all parties now calculate. Def.'s PSR Objections at 1-2; Def.'s Sentencing Memo at 1; Gov't Sentencing Memo at 5; PSR Addendum ¶¶ 40, 79. Alternatively, if Defendant receives the four level increase for Count Two, his total offense level would be 27, as Probation initially calculated. PSR ¶ 40.

Accordingly, Defendant's total offense level is 26. Given a total offense level of 26 and a criminal history category of I,[4] the Guidelines suggest a term of imprisonment of 63-78 months.

---

[4] Defendant has a criminal history score of one, which results in a criminal history category of I. USSG Ch. 5, Part A.

USSG Ch. 5, Part A. The Guidelines further recommend a term of supervised release of at least one year but not more than three years, USSG § 5D1.2(a)(2); a fine of between $12,500.00 and $125,000.00, *id.* §§ 5E1.2(a), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1 n.2.

The Court takes note this Defendant has denied he illegally entered the Brooklyn home of a cocaine trafficker in February 2012. This alleged robbery was not counted in this Defendant's Guideline calculation. However, this Court is entitled to receive all information regarding the Defendant's conduct and prior criminal activity, pursuant to 18 U.S.C. § 3553, Federal Rule of Criminal Procedure 32, *Williams v. New York*, 337 U.S. 241 (1949); *Nichols v. United States*, 511 U.S. 738, 747-48 (1994) and *United States v. Watts*, 519 U.S. 148 (1997); and although this Defendant denies he broke into a Sheepshead Bay marijuana stash house and stole marijuana in July 2012, information regarding this alleged conduct was provided to Probation from the Government and the case agent and although this robbery was not counted in the Defendant's Guideline calculation, this Court is entitled to receive and to incorporate this information at sentencing; and although none of the arrests reflected in paragraphs 48-53 of the PSR were counted in the Defendant's criminal history calculation, information relating to the Defendant's criminal history even if not resulting in a conviction is properly included in the PSR and is properly available for this Court to consider pursuant to 18 U.S.C. § 3553, Federal Rule of Criminal Procedure 32, *Williams* and *Nichols*.

E. **Pertinent Policy Statement(s) of the Sentencing Commission**

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

F. **The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

G. **The Need to Provide Restitution**

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As set forth in the Plea Agreement, restitution is mandatory in the full amount of each victim's losses as determined by the Court. Plea Agreement ¶ 1; 18 U.S.C. §§ 3663A & 3664. However, in the PSR, Probation notes restitution would be inappropriate as it would return contraband to the victim. PSR ¶ 11; *see United States v. Ojeikere*, 545 F.3d 220, 223 (2d Cir. 2008) ("It is intuitively obvious that Congress did not intend to have the federal judiciary take the lead in rewarding, through restitution orders, persons robbed of monies they had *obtained* by unlawful means, especially where as a matter of policy, federal courts generally would not award those monies were they sought in a civil action. This is especially true when the person who would benefit has violated federal laws." (quoting *United States v. Martinez*, 978 F. Supp. 1442, 1453 (D.N.M. 1997)).

## CONCLUSION

A sentence of 78 months of incarceration, 3 years of supervised release, a forfeiture money judgment of $32,000.00, and payment of the $100.00 mandatory assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 32, and the Addendum to the Presentence Investigation Report, ECF No. 40, to the extent they are not inconsistent with this opinion, and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

\_\_\_\_\_s/WFK_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 24, 2018
Brooklyn, New York